IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ARTHUR D'AMARIO, III | : | CIVIL ACTION |
| | : | |
| v. | : | No. 12-6098 |
| | : | |
| CUSPO BARRY J. WEINER, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez**                                                                                                 **February 19, 2013**

Pro se Plaintiff Arthur D'Amario, III, seeks permission to proceed *in forma pauperis* to file a civil rights action against the United States of America, two Federal Probation Officers, an Assistant United States Attorney, three federal judges, three employees of the Federal Bureau of Prisons, two attorneys who were appointed to represent him in criminal proceedings, and a doctor, all of whom are alleged to have participated in a conspiracy against him.[1]  D'Amario also seeks a temporary restraining order.  Although the Court will grant D'Amario leave to proceed *in forma pauperis*, because most of the claims in his Amended Complaint are factually frivolous and not cognizable in a civil rights action, the Court will dismiss his Amended Complaint, with the exception of his *Bivens* claim challenging the Probation Officers' alleged refusal to allow him to transfer his supervised release to the state of Rhode Island.  The Court will also deny D'Amario's motion for a temporary restraining order.

---

[1] D'Amario's initial complaint named United States Probation Officer Barry J. Weiner as the only Defendant.  D'Amario subsequently filed an Amended Complaint naming, in addition to Weiner, the United States of America; United States Probation Officer Kathleen Hopkins; Assistant United States Attorney Terrence Donnelly; Judges Michael Boudin, Ronald R. Lagueux, and Paul S. Diamond; Bureau of Prisons employees Henry Sadowski, Dennis Melick, and Harrell Watts; criminal defense attorneys Ralph A. Jacobs and Michael G. Paul; and Dr. Andrew L. Olnes.  Therefore, the Clerk of Court will be instructed to add these additional Defendants named in the Amended Complaint to the docket.  Although the Amended Complaint references other individuals who have allegedly wronged D'Amario, those individuals were neither included in the caption of the Amended Complaint nor identified as Defendants in the body of the Amended Complaint.  Accordingly, the Court does not consider them to be parties to this action.

**FACTS AND PROCEDURAL HISTORY**[2]

    A.    **D'Amario's Criminal and Litigation History**

As D'Amario's claims are based on underlying federal criminal and civil proceedings, a brief overview of his litigation history is warranted. In 1999, D'Amario was convicted and sentenced in the District of Rhode Island for being a felon in possession of a firearm. *See United States v. D'Amario*, Crim. A. No. 99-30 (D.N.H.).[3] While serving his sentence at a federal prison in New Jersey, D'Amario was indicted for threatening Judge Joseph A. DiClerico, Jr., who had presided over his trial. *See United States v. D'Amario*, 330 F. App'x 409, 411 (3d Cir. 2009). After a trial on that charge, presided over by Judge Joseph E. Irenas of the District of New Jersey, D'Amario was convicted of threatening a federal judge, pursuant to 18 U.S.C. § 115(a)(1)(B). *Id.*; *see United States v. D'Amario*, Crim. A. No. 01-346 (D.N.J.). While serving a prison sentence for that conviction, D'Amario sent a threatening letter to Judge Irenas. He was again convicted under 18 U.S.C. § 115(a)(1)(B), after a trial presided over by Judge Paul S. Diamond. *United States v. D'Amario*, Crim. A. No. 06-112 (D.N.J.). D'Amario served 84 months of imprisonment on this second § 115(a)(1)(B) conviction and is currently serving a three-year term of supervised release. *See In re D'Amario*, No. 12-4528, 2013 WL 142044, at *1 (3d Cir. Jan. 14, 2013) (per curiam).

Throughout the years, D'Amario has repeatedly attacked his convictions, sentences, and the execution of his sentence, by filing motions pursuant to 28 U.S.C. § 2255, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, motions for relief from judgment pursuant to Federal

---

[2] The following facts are taken from the Amended Complaint and publicly available dockets for criminal cases underlying the claims in this action as well as civil cases that D'Amario has filed in the federal courts.

[3] The case was ultimately transferred to the District of New Hampshire.

Rule of Civil Procedure 60(b), and applications to file second or successive § 2255 motions, none of which has been successful to date. *See, e.g.*, *D'Amario v. Banks*, No. 10-2860, 2011 WL 5857488, at *1 (C.D. Cal. Sept. 29, 2011) (describing a portion of D'Amario's litigation history), *report and recommendation adopted*, 2011 WL 5857801 (C.D. Cal. Nov. 21, 2011). He has also filed numerous unsuccessful mandamus petitions in the Third Circuit Court of Appeals and the United States Supreme Court. In anticipation of and since his release from prison in June 2012, D'Amario filed several motions and letters with Judge Diamond, seeking to transfer his supervised release from New Jersey to Rhode Island or Arizona. *See United States v. D'Amario*, Crim. A. No. 06-112 (D.N.J.) (ECF Nos. 404, 431, 436, 437, 438, 444). Judge Diamond denied his requests because neither Rhode Island nor Arizona consented to the transfer. *Id.* (ECF Nos. 410, 432, 439, 446).

D'Amario has also filed numerous civil lawsuits throughout the past three decades. Of particular relevance here is the fact that Judge Ronald Lagueux presided over one of D'Amario's civil rights lawsuits, Civil Action No. 89-11, and ruled against D'Amario. *See D'Amario v. Russo*, 750 F. Supp. 560, 566 (D.R.I. 1990); *D'Amario v. Russo*, 718 F. Supp. 118, 125 (D.R.I. 1989). D'Amario has accrued three strikes for purposes of 28 U.S.C. § 1915(g), *see D'Amario v. Mendes*, No. 10-280, 2010 WL 3780986, at *1 (D.R.I. Sept. 21, 2010), *report and recommendation adopted*, 2010 WL 4054466 (D.R.I. Oct. 15, 2010), was enjoined from filing in the District of Rhode Island, *see D'Amario v. Russo*, 132 F.3d 30 (1st Cir. 1997) (per curiam) (unpublished table disposition), and is apparently well known for his frivolous filings. *See D'Amario v. Collins*, Nos. 08-490, 09-38 & 09-106, 2009 WL 2496861 (D.R.I. Aug. 13, 2009); *In re D'Amario*, No. 07-324, 2008 WL 2471822, at *1 n.1 (D.N.H. June 13, 2008).

### B. The Instant Litigation

D'Amario initiated this action in the District of New Jersey on October 1, 2012. On January 23, 2013, the case was assigned to this Court pursuant to 28 U.S.C. § 292(b). The Court denied D'Amario's motion to proceed *in forma pauperis* without prejudice to his filing an amended motion with up-to-date information about his financial status. D'Amario's amended application, his Amended Complaint, and his motion for a temporary restraining order are now pending before the Court.

D'Amario asserts in his Amended Complaint that the Defendants—federal judges, probation officers, employees of the Federal Bureau of Prisons, attorneys who were appointed to represent him during criminal proceedings, an Assistant United States Attorney, and a doctor—are part of a decades-long conspiracy to rig the federal courts against him. The conspiracy allegedly resulted in the aforementioned criminal convictions, his related imprisonment, the denial of his petitions and motions, and the rejection of his civil complaints. According to D'Amario, the impetus for the conspiracy is his filing of complaints against certain judges and lawyers in Providence and Boston from 1987 to 1995, and his initiation of legal malpractice suits against Rhode Island attorneys in 1988 and 1993. D'Amario alleges his activity drew the attention of Judges Lagueux and Boudin, "whose mission was to utilize fraudulent governmental agents to stage frame-ups and ruin citizens' lives if they rocked the boat by questioning judicial authority." Am. Compl. ¶ 17.

D'Amario alleges Judges Boudin and Lagueux "have ties to convicted felon Mafia kingfish," and ran the entire judiciary "with a vicious Mob mentality that uses brute force to induce perjury, witness intimidation and court file tampering." *Id.* ¶ 20. As a result of their alleged personal vendetta against D'Amario, Lagueux and Boudin "illegally obtained and/or leaked all of [his]

4

confidential files . . . so that all of the judges could spy on him in secret," and "agreed to blacklist [D'Amario] so that he'd no longer have any enforceable legal rights in any court." *Id.* ¶¶ 17-18.

In connection with this plan, Judge Lagueux allegedly altered documents in Civil Action No. 89-11, so the Judge could throw out the case. *Id.* ¶ 32. Furthermore, the judges, with the help of the other Defendants, allegedly manufactured evidence and rigged the federal proceedings leading to D'Amario's conviction in Rhode Island and his two convictions in New Jersey, in part by threatening and bribing his court-appointed lawyers and destroying or altering court records.[4] D'Amario alleges those and other tactics have influenced "every proceeding [he has been involved in] since 1999," resulting in his inability to prevail on the multitude of motions, claims, and petitions he has filed in the federal courts. *Id.* ¶ 34.

The conspiracy also allegedly extends into the Federal Bureau of Prisons ("BOP") and the United States Probation Office in Rhode Island. D'Amario alleges BOP officials miscalculated his sentence and the Defendant judges exerted their influence to ensure the dismissal of habeas petitions D'Amario filed to challenge the error. The most recent effects of the alleged conspiracy are those related to D'Amario's supervised release. D'Amario alleges "all Defendants exerted influence on the BOP" to have him released to "the wrong district of NJ instead of RI, to oppress him and subject him to harsh, cruel, and unusual [supervised release] conditions." *Id.* ¶ 26. He claims he has been "under a form of house arrest in NJ" since his release from prison and asserts that Probation Officers Weiner and Hopkins will not allow him to return home to Rhode Island, among other things. *Id.* ¶¶ 26-27.

---

[4] D'Amario also alleges his attorneys were "undercover FBI informants and snitches who undermined his defenses and assumed prosecutorial roles to attack him." *Id.* ¶ 22.

The Amended Complaint also asserts claims against the United States under the Federal Tort Claims Act ("FTCA"). Additionally, D'Amario brings the following claims against the remaining Defendants: (1) constitutional and conspiracy claims pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); (2) claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c); and (3) claims that the Defendants conspired to obstruct justice in violation of 42 U.S.C. § 1985. D'Amario asserts that the federal indictments in his three criminal proceedings "must be dismissed with prejudice," Am. Compl. ¶ 50, and asks the Court expunge his convictions. He also asks the Court to temporarily and permanently restrain Probation Officers Weiner and Hopkins from interfering with his travel to Arizona and his attempt to secure housing in Rhode Island, and for compensatory and punitive damages.

**DISCUSSION**

Upon consideration of D'Amario's amended motion to proceed *in forma pauperis*, the Court concludes he will be entitled to proceed without paying the filing fee. *See Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (stating a plaintiff may proceed *in forma pauperis* if he "cannot because of his poverty 'pay or give security for the costs . . . and still be able to provide' himself and dependents 'with the necessities of life'"). Accordingly, 28 U.S.C. § 1915(e)(2)(B) applies and requires the Court to dismiss the Amended Complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from a defendant who is immune. An amended complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). An

amended complaint is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether an amended complaint fails to state a claim under § 1915(e) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The Court may consider matters of public record, *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006), and may dismiss the Amended Complaint based on an affirmative defense if the defense is obvious from the face of the pleading. *See Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002).

  A. **Factual Frivolousness**

Reading the Amended Complaint in its entirety, the Court concludes the majority of D'Amario's factual contentions are irrational and wholly incredible. D'Amario is alleging that, for over two decades, every adverse decision on a civil complaint or petition he filed, or in connection with the federal criminal proceedings that led to his convictions, has been rigged by judges and other government officials. He claims these individuals have a personal vendetta against him and are capable of controlling the entire federal judiciary, as well as lawyers, prosecutors, and perhaps doctors, due to their alleged Mafia ties and/or their ability to influence others via bribes, kickbacks, or other means. In light of "the vast power, scope, and complication of the whole alleged conspiracy," D'Amario's allegations cannot surpass credulity. *Caesar v. Megamillion Biggame Lottery*, 193 F. App'x 119, 121 (3d Cir. 2006) (per curiam). Accordingly, subject to the limited

exception discussed in n.8 below, the Court will dismiss D'Amario's claims as factually frivolous. The Court's finding of frivolousness is bolstered by D'Amario's litigation history, which, among other things, reflects that his repeated allegations of conspiracy against judges, probations officers, and lawyers have been unsuccessful.[5]  *See Brown v. City of Phila.*, 331 F. App'x 898, 900 (3d Cir. 2009) (per curiam) (taking into account pro se litigant's abusive litigation history when reviewing his complaint); *see also Walton v. Walker*, 364 F. App'x 256, 258 (7th Cir. 2010) ("[T]he district court was entitled to draw upon its familiarity with [plaintiff's] prior meritless litigation (again describing sprawling conspiracies) to conclude that his complaint consisted only of claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." (quotations omitted)).

### B. Most of D'Amario's Claims Are Not Cognizable

In any event, the vast majority of D'Amario's claims are not cognizable in a civil rights action. "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Accordingly, to the extent that D'Amario asks this Court to dismiss his indictments or invalidate his convictions, he is seeking relief that is only

---

[5] *See In re D'Amario*, 469 F. App'x 84, 84-85 (3d Cir. 2012) (per curiam) (denying mandamus petition when D'Amario alleged that Judge Diamond was conspiring with a probation officer); *D'Amario v. Bailey*, 182 F. App'x 102, 103 (3d Cir. 2006) (per curiam) (affirming denial of motion seeking recusal of the district judge and to hold witnesses in contempt, which was in part based on D'Amario's allegations of a "fantastic conspiracy theory for which he provide[d] no evidence"); *D'Amario v. Collins*, 43 F. App'x 394, 395 (1st Cir. 2002) (per curiam) (rejecting claims that D'Amario was a victim of a conspiracy to retaliate against him for filing a prior lawsuit); *D'Amario v. Russo*, No. 89-11, 1996 WL 666766, at *1 (D.R.I. Nov. 12, 1996) (denying motion for relief from judgment predicated on allegations of judicial misconduct, including allegations that Judge Lagueux altered court records), *aff'd*, 132 F.3d 30 (unpublished table disposition).

available in a habeas proceeding. *See Williams v. Sec'y Pa. Dep't of Corr.*, 459 F. App'x 87, 89 (3d Cir. 2012) (reasoning a civil rights action is not appropriate if a finding in the prisoner's favor would "'alter his sentence or undo his conviction'" (quoting *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002))); *Duran v. Weeks*, 399 F. App'x 756, 759 (3d Cir. 2010) (per curiam) ("[T]o the extent that [plaintiff] is seeking dismissal of the charges against him as a result of constitutional violations, he is essentially asking for relief only available through habeas corpus.").

Additionally, "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted). The rule announced in *Heck* applies equally to *Bivens* claims, § 1985 claims, FTCA claims, and claims brought pursuant to RICO. *See Lora-Pena v. F.B.I.*, 529 F.3d 503, 505 n.2 (3d Cir. 2008) (*Bivens*); *Swan v. Barbadoro*, 520 F.3d 24, 26 (1st Cir. 2008) (per curiam) (RICO); *Dare v. United States*, 264 F. App'x 183, 185 (3d Cir. 2008) (per curiam) (FTCA); *Zhai v. Cedar Grove Municipality*, 183 F. App'x 253, 255 (3d Cir. 2006) (§ 1985).

Success on D'Amario's claims challenging the validity of his convictions and the BOP's calculation of his sentence would either render those convictions and sentence invalid or necessarily imply their invalidity. However, D'Amario's convictions and the BOP's calculation of his sentence

have not been reversed or otherwise invalidated.[6] Accordingly, the majority of his *Bivens*, § 1985, RICO, and FTCA claims are not cognizable and must be dismissed. D'Amario should not be surprised by this result, as he previously raised similar claims unsuccessfully against some of the same Defendants named in this case.[7] *See D'Amario v. Browne*, Civ. A. No. 02-639 (E.D. Pa.) (ECF

---

[6] *See D'Amario v. United States*, Civ. A. No. 09-5468 (D.N.J.) (ECF No. 56) (denying D'Amario's § 2255 motion); *D'Amario v. United States*, No. 12-1436 (3d Cir.) (August 6, 2012 Order) (denying D'Amario a certificate of appealability); *see also D'Amario v. Zenk*, 131 F. App'x 381, 382-83 (3d Cir. 2005) (per curiam) (affirming denial of D'Amario's § 2241 petition alleging the BOP miscalculated his sentence); *D'Amario v. Bureau of Prisons*, 55 F. App'x 792, 792 (8th Cir. 2003) (per curiam) (affirming denial of D'Amario's Rule 60(b) motion seeking relief from judgment denying his third § 2241 petition as abusive); *D'Amario v. Bailey*, No. 00-2400, 2010 WL 1931132, at *1 (D.N.J. May 12, 2010) (explaining that, in 2000, Judge Irenas denied D'Amario's § 2241 petition concerning the calculation of his sentence); *D'Amario v. United States*, No. 04-2221, 2009 WL 2169238, at *1 (D.N.J. July 21, 2009) (explaining that Judge Irenas denied D'Amario's § 2255 motion in 2005 and denying a motion for relief from that judgment); *D'Amario v. United States*, 251 F.R.D. 63, 63-64 (D. Me. 2008) (denying D'Amario's fourth motion seeking relief from the judgment denying his § 2255 motion with respect to his Rhode Island conviction); *D'Amario v. Davis*, No. 07-2257, 2008 WL 2011862, at *2-3 (D. Colo. 2008) (rejecting D'Amario's attempt to attack his Rhode Island conviction).

[7] Of the few claims that are not barred by *Heck*, such as those related to the civil lawsuit that D'Amario filed in Rhode Island, the majority are time-barred. Despite D'Amario's assertion that equitable tolling saves his claims because he was "effectively banish[ed] . . . from all courts until [the day he filed his Amended Complaint]," Am. Compl. ¶ 13, it is apparent that he was capable of filing numerous petitions, motions, and lawsuits over the past three decades and that he was aware of, and raised, many of the same allegations asserted in his Amended Complaint. *Compare* Am. Compl. ¶ 32 (alleging Judge Lagueux altered records in D'Amario's civil case), *and id.* ¶¶ 43-44 (alleging D'Amario's former attorney, Ed Roy, violated confidentiality when he informed the FBI about D'Amario's threatening letters), *with D'Amario v. Russo*, No. 89-11, 1996 WL 666766, at *1 (D.R.I. Nov. 12, 1996) (denying motion for relief from judgment despite D'Amario's allegations that Judge Lagueux altered court records), *aff'd*, 132 F.3d 30 (unpublished table disposition), *and United States v. D'Amario*, 357 F. App'x 403, 404 (3d Cir. 2009) (per curiam) (noting D'Amario's allegation Roy violated the attorney-client privilege). Accordingly, equitable tolling does not save those claims. *See Jones v. Middletown Twp.*, 253 F. App'x 184, 187 (3d Cir. 2007) (per curiam) (civil rights conspiracy claims could not be saved under continuing violation theory); *Johnson v. City of Phila.*, No. 07-3110, 2010 WL 3582517, at *4 (E.D. Pa. Sept. 10, 2010) (rejecting plaintiff's argument "that the statute of limitations does not foreclose his claims because he has alleged a grand conspiracy and that therefore the statute should run from the last overt act alleged").

No. 31) (dismissing claims against Donnelly, Olnes, and others, pursuant to *Heck* and based on prosecutorial immunity, which claims were based on allegations that the defendants induced the court to deny D'Amario's habeas petition, caused prison officials to increase his sentence beyond the ordered term, and falsified medical records that kept him falsely imprisoned); *D'Amario v. Olnes*, Civ. A. No. 01-742 (D. Minn.) (ECF No. 20) (dismissing *Bivens* and FTCA claims against Olnes, Watts, and others, pursuant to *Heck*, when D'Amario alleged medical malpractice and miscalculation of his sentence).

### C. D'Amario's Challenges to His Supervised Release

Whether D'Amario has stated a cognizable claim by challenging the conditions of his supervised release presents a closer call. D'Amario alleges Probation Officers Weiner and Hopkins are preventing him from serving his term of supervised release in Rhode Island, instead of New Jersey.[8] He further alleges they will not permit him to visit his mother in Arizona, and are preventing him from obtaining affordable housing, driving his car, and engaging in social activities. D'Amario contends these conditions are unconstitutional and asserts he is being treated differently than others on supervised release.

As D'Amario is currently serving his term of supervised release, he is still in custody for purposes of seeking habeas relief. *See United States v. Essig*, 10 F.3d 968, 970 n.3 (3d Cir. 1993), *abrogated on other grounds by* Local Appellate Rule 31.3. Accordingly, § 2241 is available to him as a means of challenging the geographic and other restrictions placed upon his liberty. *See Woodall*

---

[8] Although D'Amario contends the other Defendants played a role in influencing such conditions, presumably in connection with the alleged grand conspiracy against him, those allegations will be dismissed as factually frivolous as discussed *supra*. In contrast, the factual allegations underlying D'Amario's challenges to the conditions of his supervised release are not fantastic or wholly incredible and, therefore, will not be dismissed on that basis.

11

*v. Fed. Bureau of Prisons*, 432 F.3d 235, 241-44 (3d Cir. 2005) (finding a challenge to a BOP limitation on percentage of petitioner's sentence he could spend in community confinement was challenging the execution of his sentence and could be raised under § 2241); *see also Turner v. United States*, 347 F. App'x 866, 867 (3d Cir. 2009) (per curiam) (addressing challenges to conditions of special parole in § 2241 proceeding). Indeed, D'Amario has already filed a habeas petition challenging the same conditions at issue in this lawsuit. *D'Amario v. Chief U.S. Probation Officer D.N.J.*, Civ. A. No. 12-6127 (D.N.J.).

The question raised in this case is whether D'Amario may also advance his challenges to the conditions of his supervised release in a civil rights action. As explained above, a plaintiff seeking to challenge the validity of his confinement must file a petition for a writ of habeas corpus. In contrast, a civil rights action "is appropriate for a challenge to 'a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction.'" *See Williams*, 459 F. App'x at 89 (quoting *Leamer*, 288 F.3d at 540). When a parolee, probationer, or plaintiff on supervised release seeks to challenge the conditions of parole, probation, or supervised release, "the question of whether a claim should be made [in a civil rights action] or under federal habeas has been described as a more 'metaphysical' one, because the 'conditions' of parole are the confinement." *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 99 n.3 (3d Cir. 2008) (quoting *Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003)).

Several courts have held that, when a plaintiff attacks a condition of his parole, probation, or supervised release that infringes on his liberty, he is essentially challenging a portion of his sentence and, thus, his claims may only brought in habeas proceedings. *See Williams*, 336 F.3d at 578-80 (holding a parolee's claims "that the State of Wisconsin and various parole officials are

violating [parolee's] rights to travel and marry by refusing to let him take [a] trip [to the Philippines]" should have been brought in a habeas petition); *Thornton v. Schwarzenegger*, No. 10-1583, 2011 WL 2173652, at *8-14 (S.D. Cal. June 1, 2011) (finding challenges to parole conditions, including one that prevented plaintiff from living in his home with his wife, were not cognizable in civil rights action); *Cordell v. Tilton*, 515 F. Supp. 2d 1114, 1122 (S.D. Cal. 2007) ("Plaintiff's . . . challenge [to] the conditions of his parole can only be properly brought in a habeas action."). Courts taking this approach have also reasoned *Heck* bars any claims for damages based on an allegedly unconstitutional parole condition because success on such a claim would necessarily imply the invalidity of a portion of the plaintiff's sentence. *See Savickas v. Walker*, 180 F. App'x 592, 593 (7th Cir. 2006) (holding *Heck* barred civil rights lawsuit challenging plaintiff's placement on electronic detention as condition of supervised release when that condition had not been eliminated); *Thornton*, 2011 WL 2173652, at *12-14. Other courts have held that challenges to conditions of parole, probation, or supervised release are cognizable in a civil rights action, because success in the civil rights action would not result in a speedier release from custody. *See Goodwin v. Hall*, No. 11-6068, 2011 WL 2946173, at *2 (D. Or. July 15, 2011) (allowing a challenge to parole conditions to proceed in a civil rights action); *Sledge v. Thaler*, No. 10-456, 2010 WL 2817044, at *6 (N.D. Tex. June 28, 2010) (finding petitioner's challenges to electronic monitoring and sex offender treatment were cognizable in a civil rights action because success on the challenges would only relieve petitioner from compliance with conditions and "would not result in an earlier release from custody"), *report and recommendation adopted*, 2010 WL 2817040 (N.D. Tex. July 14, 2010); *Yahweh v. U.S. Parole Comm'n*, 158 F. Supp. 2d 1332, 1338 (S.D. Fla. 2001) (holding that "habeas corpus is not an exclusive remedy for parolees challenging their parole conditions" because parole

13

conditions are akin to prison conditions, which may be challenged in a civil rights action).

This Court is persuaded by the courts that have precluded a plaintiff from attacking the conditions of his parole in a civil rights action. As the conditions of parole are tantamount to the parolee's confinement or custody, a plaintiff must proceed in a habeas action if he seeks to reduce the level of that confinement. *See Skinner v. Switzer*, 131 S. Ct. 1289, 1299 (2011) (indicating habeas is the appropriate remedy when the plaintiff seeks to "terminate custody, accelerate the future date of release from custody, [or] *reduce the level of custody*" (quotations and alterations omitted and emphasis added)). Accordingly, D'Amario's challenges to the conditions of his supervised release, such as the restrictions on his ability to travel, are not cognizable in a civil rights proceeding, and his related damages claims are barred under *Heck*.

There is, however, one narrow exception. In *Doe v. Pennsylvania Board of Probation & Parole*, an anonymous plaintiff brought a civil rights action challenging the application of certain registration requirements in Pennsylvania's Megan's Law to a Pennsylvania resident who was convicted of a sexual offense in New Jersey, but sought to return to his home state of Pennsylvania to serve his parole. 513 F.3d 95, 98 (3d Cir. 2008). The plaintiff asserted a claim under the Equal Protection Clause because, as an out-of-state offender, he was being treated differently under the law than home-state offenders. The Third Circuit concluded the plaintiff properly brought his claim under § 1983 because he was not "challenging the actual conditions of his confinement," but was instead seeking to "transfer [the] conditions placed upon him by the State of New Jersey to the Commonwealth of Pennsylvania." *Id.* at 99 n.3. Here, D'Amario is in part challenging Probation Officers Weiner and Hopkins's refusal to allow him to transfer his supervised release to the state of

Rhode Island. Accordingly, that claim is cognizable in a *Bivens* action.[9] Although D'Amario will be allowed to proceed on that claim at this time, the Court expresses no opinion as to whether he is likely to prevail. Indeed, it appears as though he was unsuccessful in a similar case he previously brought against Weiner. *See D'Amario v. Weiner*, Civ. A. No. 04-232 (D. Me.) (ECF No. 29) (finding Probation Officer Weiner was entitled to qualified immunity on claims that he unfairly banished D'Amario from Rhode Island), *report and recommendation adopted*, ECF No. 32.

### D. Motion for a Temporary Restraining Order

In his request for a temporary restraining order, D'Amario asks this Court to restrain Probation Officer Weiner "from evicting him from the Red Roof Inn at Mt. Laurel on Nov. 30, 2012, and from interfering with or obstructing [D'Amario's] winter-long visit to his mother's residence in Arizona that is to commence in early December 2012." Mot. for TRO 1. The Court was not assigned to this case until the end of January and did not receive D'Amario's updated *in forma pauperis* motion until February 4, 2013. As December has come and gone, D'Amario's motion is moot. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996) ("If developments occur during the course of adjudication that . . . prevent a court from being able to grant the requested relief, the case must be dismissed as moot."). Furthermore, D'Amario is still living at the Red Roof Inn, which means the November eviction never occurred. Accordingly, it is possible his request for relief vis-a-vis his eviction from the Red Roof Inn is also moot, because it is not clear whether he is still at risk of being evicted. In any event, even if the issues raised by D'Amario's motion are not moot, he would not be entitled to a temporary restraining order because

---

[9] D'Amario may not maintain a FTCA claim based on Probation Officers Weiner and Hopkins's alleged violations of his constitutional rights. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994) (constitutional tort claims are not cognizable under the FTCA).

he is not likely to succeed on his claims challenging the conditions of his supervised release, as they are not cognizable in a civil rights action. *See Stern v. Nix*, 840 F.2d 208, 212 (3d Cir. 1988) (stating that in order to prevail on motion for TRO, movant must establish a likelihood of success on the merits of his claims).

For the foregoing reasons, D'Amario's Amended Complaint will be dismissed with the exception of his *Bivens* claim against Probation Officers Weiner and Hopkins based on their refusal to allow him to transfer his supervised release to Rhode Island. D'Amario will not be permitted to file an Amended Complaint with respect to his dismissed claims, because amendment of those claims would be futile. D'Amario's motion for a temporary restraining order will be denied.

An appropriate order follows.

BY THE COURT:

   /s/ Juan R. Sánchez   <br>Juan R. Sánchez, J.