IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ARTHUR D'AMARIO, III | : | CIVIL ACTION |
| v. | : | No. 12-6098 |
| CUSPO BARRY J. WEINER, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                           **October 8, 2013**

      Plaintiff Arthur D'Amario, III, brings claims against Barry Weiner, Chief of the United States Probation Office for the District of Rhode Island, and Kathleen Hopkins, a Probation Officer in the same office, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), based on his allegations that these Defendants effectively banished him from Rhode Island by prohibiting him from serving his supervised release there. Defendants seek summary judgment on this claim on the basis that they are entitled to qualified immunity.[1] For the reasons set forth below, Defendants' motion will be granted.

**BACKGROUND AND PROCEDURAL HISTORY**[2]

      D'Amario was convicted in 1999 in the District of Rhode Island for being a felon in possession of a firearm. *See United States v. D'Amario*, Crim. A. No. 99-24 (D.R.I.); *see also United States v. D'Amario*, Crim. A. No. 99-30 (D.N.H.). He was subsequently convicted in the District of New Jersey for threatening a federal judge. *See United States v. D'Amario*, Crim. A. No.

---

[1] Although Defendants' papers, at times, refer to their motion as a motion to dismiss, they are clearly seeking summary judgment under Federal Rule of Civil Procedure 56, rather than dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). It is also clear D'Amario understands Defendants to be requesting summary judgment.

[2] D'Amario's criminal history can be gleaned from publicly available dockets of the criminal proceedings brought against him. The Court may take judicial notice of those proceedings. Fed. R. Evid. 201; *see also McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

01-346 (D.N.J.). While serving a term of supervised release imposed in the District of Rhode Island, D'Amario was arrested for threatening another federal judge. *United States v. D'Amario*, Crim. A. No. 06-112 (D.N.J.); *see also United States v. D'Amario*, Crim. A. No. 99-24 (D.R.I.) (ECF No. 494); *United States v. D'Amario*, Crim. A. No. 01-346 (D.N.J.) (ECF No. 181). He was convicted and sentenced to eighty-four months of imprisonment to be followed by a three-year term of supervised release. *United States v. D'Amario*, Crim. A. No. 06-112 (D.N.J.) (ECF No. 214).

At the time D'Amario filed the instant lawsuit, he had recently been released from federal prison and was serving his term of supervised release in the District of New Jersey. His Amended Complaint alleges Weiner, Hopkins, and several other Defendants participated in a conspiracy to rig the entire federal judiciary against him for several decades, cause the federal Bureau of Prisons (BOP) to miscalculate his sentence, and subject him to unfair conditions of supervised release. He also alleges that Weiner and Hopkins effectively "banished" him from Rhode Island, his home state, by preventing him from serving or transferring his supervised release there.

In a February 2013 Memorandum and Order, the Court granted D'Amario leave to proceed *in forma pauperis* and dismissed the majority of his claims pursuant to 28 U.S.C. § 1915(e)(2)(B), but permitted D'Amario to proceed on his *Bivens* claim against Weiner and Hopkins based on his inability to transfer his supervised release to Rhode Island. *See* ECF Nos. 10 & 11. After service of the Amended Complaint, Weiner and Hopkins filed a motion for summary judgment, to which D'Amario responded. In the meantime, D'Amario violated the terms of his supervised release, and his supervised release was revoked in the District of New Jersey. *See United States v. D'Amario*, Crim. A. No. 06-112 (D.N.J.) (ECF No. 483). He was sentenced to a twenty-four month term of imprisonment with no supervised release to follow. *Id.*

**FACTS**

Defendants have supported their summary judgment motion with portions of Volume 8 of the Guide to Judiciary Policies and Procedures (the Guide), Defendant Weiner's declaration, and Probation Office records. The Guide provides two ways for an offender to serve his supervised release in a given district. Weiner Decl. ¶ 3. The BOP may arrange for the offender to be released to a particular district during pre-release planning (i.e., while the offender is still incarcerated) by submitting a release plan to the probation officer for investigation and approval or disapproval. *Id*; Guide §§ 330-330.20. Alternatively, after the offender is released, the district in which he was released may transfer supervision to another district by submitting a request to the transferee district for investigation and approval. Weiner Decl. ¶ 3; Guide §§ 375-375.30. Among the factors to be considered in determining whether transfer is appropriate are whether the offender has a support system or family ties to the transferee district and whether he has a proposed residence there. Weiner Decl. ¶ 6; Guide § 375.20.

According to Weiner's declaration, the District of Rhode Island received only one formal request for a transfer in D'Amario's case, which came from the BOP during pre-release planning and proposed that D'Amario reside with an aunt in Warwick, Rhode Island. Weiner Decl. ¶¶ 4-5 & Ex. 1. Hopkins investigated the request by calling D'Amario's aunt, who informed Hopkins that D'Amario could not reside with her because she had not been in contact with him and, in any event, lived in a one-bedroom apartment. Weiner Decl. ¶ 7 & Ex. 2. Accordingly, Hopkins denied the transfer request. Weiner Decl. ¶¶ 7-9 & Exs. 2-4. The Probation Office in the District of Rhode Island did not receive any other formal requests for a transfer. Weiner Decl. ¶ 10. Furthermore, Weiner was unaware of any suitable housing arrangement for D'Amario in the District, although he

3

asserts that, if the supervising probation officer in the District of New Jersey had proposed a transfer, his office would have "investigate[d] and advise[d] accordingly." *Id.* Weiner further notes that any subsequent requests for transfer would have been "subject to the Special Condition of Supervised Release imposed upon Mr. D'Amario by Judge William G. Young, D.Mass., in District of Rhode Island cases 99-CR 24 and 03-MC-56, that D'Amario is prohibited from returning [to] Rhode Island during the period of supervised release without the permission of the United States District Court and the Probation Office." *Id.*

In response to Defendants' summary judgment motion, D'Amario submitted an unsigned declaration,[3] a 2010 letter reflecting that he had been on the waiting list for a "very-low income" apartment in Rhode Island, and a motion filed by an Assistant United States Attorney in the First Circuit in connection with one of D'Amario's appeals. In his declaration, D'Amario states Defendants falsified their evidence in connection with "an orchestrated hoax to sabotage [his] release to RI and exile [him] in NJ." Pl.'s Decl. ¶ 6. In that regard, he disputes that he proposed to reside with his aunt in Rhode Island. *Id.* ¶ 5. Rather, D'Amario alleges in October 2011 he provided "C.E. Wells and C. Sylvester of VVM," who appears to have been a case manager at a federal prison, with documentation reflecting he was "on the waiting list for a section 8 apartment" in Rhode Island. *Id.* ¶ 6. However, by the time D'Amario was released from prison on June 20, 2012, his name "had been deleted from that waiting list." *Id.* D'Amario believes Defendants caused his housing opportunity in Rhode Island to fall through, and claims Weiner similarly banished him from Rhode Island during a prior term of supervised release in 2003. *Id.* ¶¶ 3-4. Additionally, he attests that a

---

[3] Generally, an unsigned declaration cannot defeat a motion for summary judgment. *See Pension Ben. Guar. Corp. v. Heppenstall Co.*, 633 F.2d 293, 300 (3d Cir. 1980). However, Defendants are entitled to summary judgment even considering D'Amario's declaration.

4

probation officer in Camden, New Jersey informed him Weiner "does not want [him] in Rhode Island." *Id.* ¶ 2. Finally, D'Amario contends he should not have been subject to the special condition imposed by Judge Young because that condition had "expired." *Id.* ¶ 1; Supp. Mem.

**DISCUSSION**[4]

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To determine whether defendants are entitled to qualified immunity, [the Court] must ask whether the facts alleged show the officer's conduct violated a constitutional right, and whether the right was clearly established." *Henry v. City of Erie*, — F.3d —, 2013 WL 4498669, at *4 (3d Cir. Aug. 23, 2013) (quotations omitted). A district court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the

---

[4] As D'Amario's supervised release has been revoked, with no supervised release to follow, his claims for injunctive relief are moot. *See Newland v. Reehorst*, 328 F. App'x 788, 790 (3d Cir. 2009) (per curiam).

5

circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 228, 236 (2009).

Weiner and Hopkins argue they are entitled to qualified immunity from D'Amario's claims because they did not violate his clearly established constitutional rights. They note they did not refuse to allow D'Amario to transfer his supervision to Rhode Island. Rather, they simply investigated the one proposal they received from the BOP—that D'Amario live with his aunt—and reasonably rejected it in accordance with applicable procedures.

D'Amario counters that Defendants fabricated the evidence supporting their version of events, noting he made arrangements for section 8 housing in Rhode Island and sought to live in such housing, as opposed to in his aunt's house. He argues Defendants interfered with those housing arrangements, which prevented him from being released to Rhode Island pursuant to 18 U.S.C. § 3624(d)(3). As a result of that "banishment," he claims Defendants have deprived him of his liberty.[5]

Courts have generally been hostile to claims of probationers, parolees, or persons on supervised release challenging the constitutionality of restrictions on where they can live or travel. *See Turner v. United States*, 347 F. App'x 866, 869 (3d Cir. 2009) (per curiam) ("[T]o the extent that Turner argues that such travel restrictions in general are unconstitutional, we have previously held that 'conditions of probation include restrictions on a defendant's right to travel.'" (quoting *United States v. Warren*, 186 F.3d 358, 366 (3d Cir. 1999))); *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d

---

[5] D'Amario also contends Defendants disregarded their duty to "improve" his condition under 18 U.S.C. § 3603(3). Pl.'s Mem. at 1-2. That provision requires a probation officer to "use all suitable methods, not inconsistent with the conditions specified by the court, to aid a probationer or a person on supervised release who is under his supervision, and to bring about improvements in his conduct and condition." 18 U.S.C. § 3603(3). As D'Amario was not under Defendants' supervision at the time of events giving rise to this lawsuit, the provision is irrelevant to his claims.

95, 114 (3d Cir. 2008) (Ambro, J., dissenting) ("[T]he courts of appeals to address directly the right to interstate travel for those on probation or parole have all concluded that the right is either limited or non-existent.");[6] *Williams v. Wisconsin,* 336 F.3d 576, 581 (7th Cir.2003) ("Like prisoners, . . . parolees . . . have no right to control where they live in the United States; the right to travel is extinguished for the entire balance of their sentences."); *United States v. Ohler*, 22 F.3d 857, 858 (9th Cir. 1994) ("We conclude that no liberty interest was at stake in the transfer of appellant's probation jurisdiction from the district where the original crime was committed to the district where the appellant resided and the probation violations were committed."); *Bagley v. Harvey*, 718 F.2d 921, 924 (9th Cir. 1983) ("[A] parolee does not have a constitutional interest that entitles him to parole in any particular district."). However, there is case law reflecting that "[u]nder some circumstances, . . . parole conditions that cause the de facto banishment of a parolee can amount to an unconstitutional infringement of liberty." *Cordell v. Tilton*, 515 F. Supp. 2d 1114, 1123 (S.D. Cal. 2007); *see also United States v. Sicher*, 239 F.3d 289, 292 (3d Cir. 2000) (citing cases in which courts have struck banishment provisions as illegal).

Assuming that banishment of an offender on supervised release from a particular state gives rise to a constitutional claim in some circumstances, nothing establishes that Defendants banished D'Amario from Rhode Island. Aside from evidence of the BOP's one pre-release request to the District of Rhode Island Probation Office that D'Amario reside with his aunt—which D'Amario discredits—there is no evidence Defendants received any transfer requests from the BOP or the

---

[6] In *Doe*, the plaintiff alleged that the state violated the Equal Protection Clause by treating out-of-state offenders differently than in-state offenders. Defendants in this case correctly point out that D'Amario is not claiming he has been treated differently than any similarly situated offenders. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

7

Probation Office in New Jersey. Viewed in a light most favorable to D'Amario, the evidence reflects that he was on a waiting list for section 8 housing in Rhode Island, and that he notified individuals other than Defendants about the potential housing opportunity. However, there is no evidence that Defendants interfered with, or were even aware of, those housing arrangements, which were not guaranteed, as explained in the letter informing D'Amario of his spot on the waiting list. D'Amario's conclusory allegations of "sabotage" to the contrary are not entitled to any weight, notwithstanding whatever may have happened in 2003 while D'Amario was serving a different term of supervised release in a different jurisdiction. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (the purpose of Rule 56 "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit").

At most, D'Amario has produced a hearsay statement from a probation officer in New Jersey that Weiner "[did] not want [him] in Rhode Island." Pl.'s Decl. ¶ 2. "In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 at n. 2 (3d Cir. 2000). It is not clear whether the probation officer's statement was based on a conversation with Weiner in which Weiner stated he did not want D'Amario in Rhode Island, or if the statement was based on speculation. Even assuming the former, the statement alone is insufficient to support D'Amario's allegations that Weiner banished him from his home state.

It is inconsequential whether D'Amario was, during his most recent term of supervised release, subject to the special condition imposed by Judge Young in the District of Rhode Island, that he was "prohibited from returning [to] Rhode Island during the period of supervised release without the permission of the United States District Court and the Probation Office." Weiner Decl. ¶ 10.

That condition only requires D'Amario to obtain permission from the Court and Probation Office prior to returning to Rhode Island. As discussed above, the record does not establish that Defendants denied D'Amario permission to return to Rhode Island in a manner inconsistent with the Constitution.

Furthermore, D'Amario did not have a "right" to be released in Rhode Island pursuant to 18 U.S.C. § 3624(d)(3). Pl.'s Mem. at 1. Section 3624(d)(3) provides that, "[u]pon the release of a prisoner on the expiration of the prisoner's term of imprisonment, the Bureau of Prisons shall furnish the prisoner with . . . transportation to the place of the prisoner's conviction, to the prisoner's bona fide residence within the United States, or to such other place within the United States as may be authorized by the Director." 18 U.S.C. § 3624(d)(3). "[T]he BOP is bound by [that] statute to select the place where the prisoner is to be released" and "has full discretion to determine the location of [the] prisoner's release." *United States v. Hartshorn*, 163 F. App'x 325, 329-30 (5th Cir. 2006). It was, therefore, within the discretion of the BOP to release D'Amario in the District of New Jersey, the "place of [his] conviction." 18 U.S.C. § 3624(d)(3).

In sum, the record does not raise a genuine issue for trial as to whether Defendants violated D'Amario's constitutional rights. Accordingly, Defendants are entitled to summary judgment. An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez<br>Juan R. Sánchez, J.

9