IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ARTHUR D'AMARIO, III  :  CIVIL ACTION
  :
  v.  :  No. 12-6098
  :
CUSPO BARRY J. WEINER, et al.  :

### MEMORANDUM

**Juan R. Sánchez, J.**                                                        **April 3, 2014**

Plaintiff Arthur D'Amario, III seeks reconsideration of this Court's October 8, 2013, Memorandum and Order granting summary judgment to Barry J. Weiner and Kathleen Hopkins on D'Amario's claims these Defendants violated his constitutional rights by preventing him from returning to Rhode Island to serve his supervised release there.   D'Amario also seeks reconsideration of the Court's earlier dismissal of claims challenging conditions of his supervised release on the basis that those claims are not cognizable in a civil rights action.   For the following reasons, the Court will deny D'Amario's motion.

I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

D'Amario's Amended Complaint named numerous Defendants, including Weiner and Hopkins, two Probation Officers in the District of Rhode Island, and raised several claims, many of which were brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  D'Amario alleged that judges and attorneys were conspiring against him, his federal convictions were the product of fraud, and the federal courts were essentially rigged against him.  D'Amario, who was on supervised release when he filed this lawsuit after having been convicted in the District of New Jersey for threatening a federal judge, *see United States v. D'Amario*, Crim. A. No. 06-112 (D.N.J.), also challenged the constitutionality of certain aspects of his supervised release and alleged Weiner and Hopkins

violated his constitutional rights by refusing to allow him to transfer his supervised release to the District of Rhode Island.

In a February 19, 2013, Memorandum and Order, the Court granted D'Amario leave to proceed in forma pauperis and dismissed many of his claims pursuant to 28 U.S.C. § 1915(e)(2)(B).   In particular, the Court dismissed D'Amario's claims challenging the conditions of his supervised release, concluding those claims were not cognizable in a civil rights action because D'Amario was required to raise them in a habeas proceeding, or establish that the challenged conditions had been invalidated prior to proceeding in a civil rights action for damages.   *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).   The Court, however, allowed D'Amario to proceed on his *Bivens* claim that Weiner and Hopkins prevented him from transferring his supervised release from the District of New Jersey to the District of Rhode Island.

Weiner and Hopkins responded to the Amended Complaint by filing a motion for summary judgment arguing they were entitled to qualified immunity.   D'Amario subsequently violated the terms of his supervised release, and his supervised release was revoked in the District of New Jersey.   In an October 8, 2013, Memorandum and Order, the Court granted summary judgment to Weiner and Hopkins on the basis that nothing in the record established those Defendants had violated D'Amario's constitutional rights or acted unreasonably.   Indeed, there was no evidence the Defendants "banished" D'Amario from Rhode Island, as he claimed, or otherwise interfered with his attempts to secure housing there.

D'Amario moves for reconsideration of the Court's Order granting summary judgment. He also challenges the Court's dismissal of his claims related to the conditions of his supervised release in light of new precedent from the Ninth Circuit.

## II.    STANDARD OF REVIEW

A party seeking reconsideration must establish "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available [at the time of the court's prior ruling]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). In other words, "a motion for reconsideration addresses only factual and legal matters that the Court may have overlooked." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (citation and internal quotation marks omitted). "It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through— rightly or wrongly." *Id.* (citation, internal quotation marks, and alterations omitted).

## III.    DISCUSSION

### A.    <u>Summary Judgment</u>

In his motion for reconsideration, D'Amario contends the Court granted summary judgment based on an erroneous conclusion that "there is no evidence Defendants received any transfer requests from the BOP or the Probation Office in New Jersey." Mot. for Recons. 1 (quoting Oct. 8, 2013, Mem. 7-8). D'Amario maintains that, contrary to the Court's observation, an order in his criminal case and a transcript from his revocation hearing establish the Probation Office in Rhode Island had refused a transfer request.[1]

D'Amario's argument is based on a selective quoting from the Court's Memorandum, which omits the Court's observation that Defendants had presented evidence (which D'Amario claimed was falsified) of "one pre-release request to the District of Rhode Island Probation Office that D'Amario reside with his aunt." Oct. 8, 2013, Mem. 7. The evidence presented in

---

[1] D'Amario contends these documents were not available to him at the time he filed his response to the Defendants' motion.

connection with D'Amario's motion is entirely consistent with Defendants' version of events. That the New Jersey officers who testified at D'Amario's revocation hearing did not recall the reason for the denial of the transfer request does not establish Defendants falsified evidence. In fact, Judge Diamond, in denying D'Amario's Motion to Correct Sentence in his criminal case, relied upon the same evidence submitted by Defendants in this case. *See United States v. D'Amario*, Crim. A. No. 06-112 (D.N.J.) (Document No. 410 at 2 (citing Document No. 407 at 2, Ex. B)). In any event, taking the entire record into consideration—including the documents attached to the motion for reconsideration—D'Amario simply has not established that the Defendants violated his constitutional rights. Furthermore, as explained in the Court's October 8, 2013, Memorandum, D'Amario had no right to be released in the District of Rhode Island. Accordingly, he has not established a basis for reconsideration.

**B.**    **Dismissal of Challenges to Supervised Release**

D'Amario also challenges the Court's dismissal of his claims challenging the conditions of his supervised release[2] in light of the Ninth Circuit's recent opinion in *Thornton v. Brown*, --- F.3d ---, 2013 WL 7216368 (9th Cir. Feb. 18, 2014). Since any claims for injunctive relief were mooted by the revocation of D'Amario's supervised release, only his damages claims are at issue in his current challenge. *See* Oct. 8, 2013, Mem. 5 n.4 (citing *Newland v. Reehorst*, 328 F. App'x 788, 790 (3d Cir. 2009) (per curiam)).

---

[2] Those claims are encompassed in paragraphs 26 and 27 of the Amended Complaint. Specifically, D'Amario alleged he was "subject[ed] . . . to harsh, cruel and unusual [supervised release] conditions . . . [in that he] has been held under a form of house arrest in NJ and not allowed to drive his car, wear his own clothes, rent an apartment, see his family, date a female, exercise, or engage in any social activities." Am. Compl. ¶ 26. He further alleged Weiner and Hopkins would not allow him to stay with his mother in Arizona. *Id.* ¶ 27. D'Amario sought damages and injunctive relief, including an order restraining Weiner and Hopkins from "interfering with [his] travel to AZ to visit his mother." *Id.* at 7. Likewise, D'Amario's motions for a temporary restraining order sought relief from the restrictions on his ability to travel to Arizona to visit his mother.

The Supreme Court has long recognized a prisoner challenging the fact or duration of his confinement must file a petition for a writ of habeas corpus rather than a civil rights action. *See, e.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). In *Preiser*, the Court held prisoners challenging the validity of administrative procedures used to deprive them of good-time credits and seeking release from imprisonment were required to proceed in a habeas action. The Court explained "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." 411 U.S. at 484. As the constitutional challenges raised by the prisoners essentially challenged their confinement and sought "immediate release from that confinement or the shortening of its duration," the claims were within the "core of habeas corpus" and thus could not be raised in a civil rights action. *Id.* at 489.

The Supreme Court has since extended *Preiser* to preclude plaintiffs from proceeding in a civil rights action—even if they only seek damages or declaratory relief—if their claim is essentially a constitutional attack on their conviction or imprisonment. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (holding a civil rights action is "barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration" (emphasis omitted)). The Court held in *Heck v. Humphrey*, that a civil rights plaintiff may not "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, [unless he] prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into

question by a federal court's issuance of a writ of habeas corpus."  512 U.S. 477, 486-87 (1994)

(footnote and citation omitted).  In *Edwards v. Balisok*, another case involving constitutional

challenges to procedures related to good-time credits, the Court held the prisoner's claims for

damages and declaratory relief were not cognizable in a civil rights action because success in the

action would "necessarily imply the invalidity of the deprivation of his good-time credits."  520

U.S. 641, 646 (1997).

At the same time, the Supreme Court has permitted prisoners to proceed in civil rights

actions if their claims challenge the conditions of their confinement, but do not fall within the

core of habeas, or if success in their civil rights action would not necessarily imply the invalidity

of their confinement.  *See Skinner v. Switzer*, 131 S. Ct. 1289, 1293, 1298-99 (2011) (procedural

due process claim based on denial of access to DNA evidence); *Dotson*, 544 U.S. at 81-82

(constitutional challenge to state procedures concerning eligibility for parole); *Nelson v.

Campbell*, 541 U.S. 637, 639-40 (2004) (constitutional challenge to method for executing death

sentence); *Muhammad v. Close*, 540 U.S. 749, 753 (2004) (per curiam) (retaliation claim based

on prison disciplinary action); *Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (constitutional

challenge to prison procedures seeking prospective injunctive relief).

How the Supreme Court's jurisprudence in this area applies when a prisoner challenges

the conditions of parole, probation, or supervised release remains unsettled.[3]  Although the Third

Circuit has not addressed the issue, the Seventh Circuit has held such challenges must be made in

a habeas proceeding rather than a civil rights proceeding.  In *Drollinger v. Milligan*, a

probationer brought a civil rights action challenging several restrictions imposed as terms of her

probation, including restrictions preventing her from having a roommate, leaving the house at

---

[3] Although the above-cited cases involved § 1983 actions, their reasoning has been applied
equally to *Bivens* claims.  *See*, *e.g.*, *Lora-Pena v. FBI*, 529 F.3d 503, 505 n.2 (3d Cir. 2008).

6

night, and visiting her ex-husband or his parents.  552 F.2d 1220, 1223 n.1 (7th Cir. 1977).  The

Seventh Circuit observed the distinction between challenges to the fact or duration of

confinement (which are the province of habeas) and challenges to conditions of confinement

(which may be raised in a civil rights action) was difficult to apply in a case concerning

probation conditions:

> Because probation is by its nature less confining than incarceration, the distinction
> between the fact of confinement and the conditions thereof is necessarily blurred.
> The elimination or substitution, for example, of one of the conditions of
> [plaintiff's] probation would free her substantially from her confinement;
> figuratively speaking, one of the "bars" would be removed from her cell.

*Id.* at 1225.  Based on that observation, and the notion that the conditions of probation placed the

plaintiff in "custody" for purposes of the habeas statute, the Seventh Circuit concluded that the

plaintiff was required to proceed in habeas because "[t]he release from [her] custody, [i.e., the

probation conditions,] even if only partial, is the traditional function of the writ of habeas

corpus."  *Id.*  Following *Drollinger*, the Seventh Circuit subsequently held in *Williams v.

Wisconsin* that a parolee's claims for damages based on a parole agent's refusal to allow him to

travel to the Philippines to marry a woman located there were not cognizable in a civil rights

action.  336 F.3d 576, 578 (7th Cir. 2003).  The court again observed that the distinction between

challenges to the fact or duration of confinement and challenges to conditions of confinement

was difficult to apply in a case concerning parole conditions because, "[f]or parolees, . . . the

'conditions' of parole *are* the confinement."[4]  *Id.* at 579.

---

[4] The Seventh Circuit's observation in this regard was acknowledged by the Third Circuit in *Doe
v. Pennsylvania Board of Probation & Parole*, 513 F.3d 95, 99 n.3 (3d Cir. 2008) ("[F]or
parolees and probationers, the question of whether a claim should be made under Section 1983 or
under federal habeas has been described as a more 'metaphysical' one, because the 'conditions'
of parole are the confinement.").

This Court initially followed the Seventh Circuit's approach.  However, as D'Amario points out, the Ninth Circuit has since spoken on the issue in *Thornton v. Brown*, ---F.3d---, 2013 WL 7216368 (9th Cir. Feb. 18, 2014).[5]  *Thornton* concerned a civil rights action brought by a parolee challenging two conditions of his parole: a residency restriction and a requirement that he submit to electronic monitoring using a Global Positioning System device.  The majority held "a state parolee may challenge a condition of parole under § 1983 if his or her claim, if successful, would neither result in speedier release from parole nor imply, either directly or indirectly, the invalidity of the criminal judgments underlying that parole term."  *Id.* at *9. According to the majority, the plaintiff's challenges were cognizable in a civil rights action because (1) in California, where the case originated, "a parolee's status is legally and factually distinct from his conditions of parole," yet plaintiff did not challenge "his status as a parolee or the duration of his parole"; (2) even if plaintiff were to succeed in his civil rights action, "nearly all of his parole conditions will remain in effect"; and (3) the parole conditions at issue were imposed by an administrative body, rather than as part of a court judgment.  *Id.* at *7-9.

Judge Ikuta, who dissented, took a contrary view of the plaintiff's claims, concluding that the claims "if successful, would necessarily demonstrate that a portion of [plaintiff's] underlying sentence was invalid."  *Id.* at *9 (Ikuta, J. dissenting).  The dissent observed that California law requires the California Department of Corrections and Rehabilitation to provide the conditions of parole to be served in connection with a given state sentence.  As the plaintiff's sentence was required to include a term of parole, the dissent concluded a challenge to the discretionary conditions set by the California Department of Corrections and Rehabilitation was, in fact, a challenge to his sentence.  The dissent responded to the majority by (1) rejecting the majority's

---

[5] *Thornton* issued on July 31, 2013.  On February 18, 2014, in connection with a petition for rehearing and rehearing en banc, the Ninth Circuit issued an amended opinion and dissent.

"ill-founded attempt to distinguish between the status of parole and its conditions," on the basis that "[a] person's technical 'status' as a parolee has little or no meaning if all the [parole conditions] have been removed"; (2) questioning the conclusion that the limited number of conditions challenged rendered the plaintiff's claims cognizable in a civil rights action because the "focus on the number of challenged parole conditions is entirely arbitrary"; and (3) observing "the Supreme Court has not indicated that it makes any difference under *Heck* whether an agency, rather than a court, establishes the parole conditions that are imposed as part of a sentence under state law, and the majority does not explain why this is significant." *Id.* at *11-13.

The Court is not persuaded by the majority opinion in *Thornton*.  As noted above, Supreme Court jurisprudence makes clear that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484; *see also Skinner*, 131 S. Ct. at 1299 (suggesting habeas is the appropriate remedy if plaintiff seeks to terminate his custody, accelerate his release date, or reduce the level of his custody); *Leamer v. Fauver*, 288 F.3d 532, 541 (3d Cir. 2002) (observing the purpose of the habeas statute is to "to secure release from illegal custody").  If, by virtue of being subject to conditions of parole, probation, or supervised release, an individual is "in custody" for purposes of filing a habeas petition, it is logical that a habeas proceeding is the proper vehicle for challenging that custody.  *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963).  Otherwise, a parolee or individual on supervised release could secure complete release from custody by challenging the constitutionality of all of his parole or supervised release conditions pursuant to § 1983 or *Bivens*, and seeking invalidation of those conditions.  Additionally, the individual could secure damages based on a finding that he was

subject to unconstitutional custody as a result of unconstitutional parole or supervised release conditions.

The *Thornton* majority attempts to address this issue by noting the plaintiff in that case only challenged two of several parole conditions.  However, as the dissent accurately observes, there is no logical principle for limiting the majority's rule to allow a district court to determine when a plaintiff's civil rights challenge crosses into the core of habeas.  *See Thornton*, 2013 WL 7216368, at *12 (Ikuta, J. dissenting).  If, as the Seventh Circuit observed, conditions of parole, probation, or supervised release are tantamount to confinement in this context, then it should not matter how many conditions a plaintiff challenges because an attack on those conditions would equate to an attack on the fact of his confinement.  The distinction between the "status" of a parolee and the "conditions" of parole drawn by the *Thornton* majority is equally elusive because a person who has the status of parolee is necessarily subject to parole conditions—without the conditions, a parolee's status is no different from the "status" of an individual who is not on parole.

Furthermore, it is difficult to understand how a constitutional challenge to one's parole, probation, or supervised release conditions in a civil rights action would not "necessarily imply the invalidity" of a portion of the plaintiff's sentence, even if probation officers were responsible for executing the details of that sentence.  *Heck*, 512 U.S. at 487.  Indeed, the Third Circuit has applied *Heck* to bar damages claims based on a parole board's denial of parole without any suggestion that the administrative nature of the decision precludes *Heck*'s applicability.  *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006).  Here, D'Amario's criminal judgment of sentence imposed a term of supervised release and contained several standard conditions of supervised release, with the supervision to be carried out by the probation office.  *See United*

*States v. D'Amario*, Crim. A. No. 06-112 (D.N.J.) (Document No. 214); *see also* 18 U.S.C. § 3601 (providing an individual placed on supervised release "shall, during the term imposed, be supervised by a probation officer to the degree warranted by the conditions specified by the sentencing court"). D'Amario's challenge to the Probation Office's execution of the supervised release component his sentence seems no different than the types of challenges raised by prisoners to the execution of their sentences based on administrative calculations or administrative revocations of good time credits.

In any event, even if D'Amario's claims were cognizable, the Court fails to understand how two probation officers from the District of Rhode Island (or any other Defendant named in this case) could have imposed conditions of supervised release on D'Amario when he was being supervised by probation officers in the District of New Jersey. The transcripts attached to D'Amario's motion for reconsideration and his publicly available criminal docket reflect that probation officers in the District of New Jersey were responsible for supervising D'Amario upon his release from prison. *See United States v. D'Amario*, Crim. A. No. 06-112 (D.N.J.) (Document No. 497 at 2). As a result, the only apparent basis for D'Amario's claims arising from his supervised release conditions—apart from the transfer issue discussed above—is his overarching conspiracy theory, which this Court rejected in its earlier opinion. Although a court must generally accept the truth of a plaintiff's allegations, it need not credit those allegations that are clearly belied by public records or those that are clearly baseless. *Cf. Ball v. Famiglio*, 726 F.3d 448, 469-70 (3d Cir. 2013) (indicating that the credibility of a pro se plaintiff's allegations should be considered in "in the context of all of the facts of [the] case" and concluding that plaintiff's allegations were not credible based on information in the record). Accordingly, as an alternative basis for dismissal, the Court concludes D'Amario's claims against Weiner, Hopkins,

or any other Defendant based on their alleged imposition of unfair supervised release conditions are factually frivolous because they are premised on allegations that are clearly baseless. *See Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[D]istrict courts, who are all too familiar with factually frivolous claims, are in the best position to determine which cases [are clearly baseless]." (internal citation and quotation marks omitted)).

## IV.   CONCLUSION

For the foregoing reasons, D'Amario is not entitled to reconsideration of the Court's prior rulings.  An appropriate order follows.


BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez, J.